UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCISCO NUNEZ,

                        Plaintiff,

-v-

DETECTIVE DAMIAN DIEDRICK,

                        Defendant.

No. 14-cv-4182 (RJS)
<u>OPINION & ORDER</u>

---

<u>RICHARD J. SULLIVAN</u>, District Judge:

    Plaintiff Francisco Nunez ("Nunez" or "Plaintiff") brings this action under 42 U.S.C. § 1983 against a New York City police detective, Damian Diedrick ("Diedrick" or "Defendant"), alleging false arrest, malicious prosecution, and excessive force. (Doc. Nos. 27, 40.) Now before the Court is Diedrick's motion for partial summary judgment on the false arrest and malicious prosecution claims. (Doc. No. 61.) For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts[1]

    On May 27, 2011 at 10:12 p.m., shots were fired into a crowd of approximately 25 people standing on 1171 Morrison Avenue in the Bronx. (Def. 56.1 Stmt. ¶¶ 1–2; Doc. Nos. 64-2 at 1–2, 64-3 at 3–4, 70-9, 70-11 at 2, 70-13.) Although no one was killed, the gunshots struck three bystanders, including a five-year-old girl. (Doc. Nos. 70-1 at 3, 70-11 at 2–3, 70-17.)

---

[1] The facts are drawn from Diedrick's Local Civil Rule 56.1 Statement (Doc. No. 63 ("Def. 56.1 Stmt.")), Nunez's Counterstatement (Doc. No. 69-1 ("Pl. Opp'n 56.1 Stmt.")), Diedrick's Local Civil Rule 56.1 Counterstatement (Doc. No. 75 ("Def. Opp'n 56.1 Stmt."), the declarations submitted in support of and in opposition to the motion, and the exhibits attached thereto (Doc. Nos. 64, 66, 70, 76). Unless otherwise noted, where only one party's 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In resolving the motion, the Court has also considered Diedrick's memorandum of law in support of his motion (Doc. No. 62 ("Mem.")), Nunez's opposition brief (Doc. No. 69 ("Opp'n")), and Diedrick's reply (Doc. No. 74 ("Reply")).

According to one witness, Brian Perez, two men fired shots into the crowd. On June 2, 2011, Perez identified Ramon Ferreira, a man with long black hair, as one of the two shooters in both a photo array and a line-up. (Def. 56.1 Stmt. ¶¶ 12–20.) On June 8, 2011, Diedrick and Detective Cliff Acosta ("Acosta") showed Perez another photo array, at which Perez identified Nunez – a man with short hair – as the other shooter who fired into the crowd at 1171 Morrison Avenue. (Def. 56.1 Stmt. ¶¶ 21–22; *see also* Doc. Nos. 64-5, 66-3 ¶ 2, 70-9, 70-10.) On June 10, 2011, Diedrick and two other police officers took Nunez into custody, questioned him about the shooting, and placed him in a lineup. (Def. 56.1 Stmt. ¶¶ 23–25.) Perez attended the lineup and once again identified Nunez as the second shooter. (Def. 56.1 Stmt. ¶ 25; *see also* Doc. No. 64-5 at 12–20.) That same day, Diedrick swore out a criminal complaint, charging Nunez with attempted murder, assault, and criminal possession of a weapon in connection with the May 27, 2011 shootings. (Def. 56.1 Stmt. ¶ 26; *see also* Doc. No. 64-6.)

On September 7, 2011, the Bronx County District Attorney's Office ("Bronx DA") presented its case against Nunez to a grand jury, which indicted Nunez on four counts of attempted murder in the second degree, one count of attempted assault in the first degree, two counts of assault in the first degree, five counts of assault in the second degree, and two counts of criminal possession of a weapon in the second degree. (Def. 56.1 Stmt. ¶ 28.) On April 23, 2014, the Bronx DA recommended that the indictment be dismissed, which led to Nunez's release from custody. (Def. 56.1 Stmt. ¶¶ 38, 40.)

B. Procedural History

On June 6, 2014, Nunez commenced this action (Doc. No. 2), and on January 23, 2015, he filed an Amended Complaint (Doc. No. 27) in which he brought claims against the City of New York and former and current employees of the City's Police Department ("NYPD") and the Bronx DA for false arrest, false imprisonment, malicious prosecution, and excessive force. On March

31, 2016, the Court issued an opinion and order dismissing all claims except for the false arrest, malicious prosecution, and excessive force claims against Defendant Diedrick. *Nunez v. City of New York*, No. 14-cv-4182 (RJS), 2016 WL 1322448 (S.D.N.Y. Mar. 31, 2016). On October 29, 2016, the parties completed discovery. (Doc. No. 44.) Thereafter, Diedrick filed the instant motion for partial summary judgment (Doc. No. 69), which was fully briefed on April 3, 2017 (Doc. No. 72).

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable factfinder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and/or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation

3

marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To prevail on a claim under Section 1983, a plaintiff must demonstrate (1) the deprivation of any right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *Id.* The plaintiff must also establish that the defendant was "personally involved in the unconstitutional conduct." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

Here, Nunez alleges that Diedrick caused his false arrest and malicious prosecution in violation of Section 1983. The Court turns to Nunez's claims and analyzes each separately.

#### A. False Arrest

##### 1. Probable Cause

A Section 1983 claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, "is substantially the same as a claim for false arrest under New York law."

4

*Weyant*, 101 F.3d at 852. To prove such a claim, a plaintiff must show that "(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). The law is clear that probable cause makes a confinement "privileged" and "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852. "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* "[T]he probable cause standard . . . is a practical, nontechnical conception." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The Court inquires "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (internal citation omitted).

The law is also well settled that where "an officer is advised of a crime by a victim or an eyewitness," "[p]robable cause will generally be found to exist." *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005); *accord Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Therefore, "[a]bsent circumstances that cast doubt on the reliability of an identification, such as an unduly suggestive procedure, [a] 'positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest.'" *Williams v. City of New York*, No. 14-cv-7158 (JPO), 2016 WL 3194369, at *4 (S.D.N.Y. June 7, 2016) (quoting *Celestin v. City of New York*, 581 F. Supp. 2d

420, 431 (E.D.N.Y. 2008)). In other words, "[a]n eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances." *Id.* (quoting *Candelario v. City of New York*, No. 12-cv-1206 (LAP), 2013 WL 1339102, at *5 (S.D.N.Y. Apr. 2, 2013)). On the other hand, probable cause may not exist where "the circumstances raise doubt as to the . . . veracity" of the eyewitness's account. *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012).

Here, Nunez does not dispute that: (1) Perez unequivocally identified him as a shooter in both the June 8, 2011 photo array and in the June 10, 2011 lineup, (2) Perez was an eyewitness to the shootings, and (3) Diedrick was present for both identifications. Nor does Nunez point to any evidence that either the photo array or the lineup was unduly suggestive. Rather, Nunez insists that it was not reasonable for Diedrick to have relied on Perez's identifications. Indeed, at the Rule 12(b)(6) stage, the Court denied Diedrick's motion to dismiss precisely because Nunez had plausibly alleged in his amended complaint that "Diedrick had reason to doubt Perez's credibility." *Nunez*, 2016 WL 1322448, at *5 (denying motion to dismiss false arrest and malicious prosecution claims in light of Perez's alleged contradictory 911 call, the "stark differences between Plaintiff's physical appearance and the descriptions of the shooters that eyewitnesses – including Perez" allegedly "provided to the police immediately after the shooting," and the fact that Perez had "a criminal record, was on probation, and was affiliated with the gang targeted by the shooting").

But at this stage of the proceedings, Nunez "cannot defeat summary judgment by relying on allegations in [his] pleadings," *Murphy v. Lajaunie*, No. 13-cv-6503 (RJS), 2016 WL 1192689, at *6 (S.D.N.Y. Mar. 22, 2016) (citing *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); he must instead point to evidence in the record that is cognizable under Rule 56, such as "depositions, documents," "affidavits," or "declarations," Fed. R. Civ. P. 56(c). As relevant here,

6

Nunez must point to evidence that would demonstrate Diedrick's awareness of the various facts he claims rendered Perez's identifications unreliable. *See Panetta*, 460 F.3d at 398 (in evaluating probable cause, "'[w]e consider only information [the officer] relied on in concluding that there was probable cause to arrest [the plaintiff],' not every theoretically plausible piece of exculpatory evidence or claim of innocence that might have existed" (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 168 (2d Cir. 2002)). This he has failed to do.

Nunez primarily relies on the audio of a 911 call from May 27, 2011, in which the caller informed the operator that two shooters with "long hair in a pony tail" – a description that did not fit the short-haired Nunez – had fired into the crowd on 1171 Morrison Avenue. (Opp'n 13–14.) But Nunez has not presented any evidence that Diedrick ever heard the audio from the 911 call or was even aware of its existence at the time of the arrest. Without this evidence, the mere existence of the 911 call has no bearing on the Court's probable cause inquiry, which focuses on what facts were "known to [Diedrick] at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).[2]

Most of Nunez's other attempts to create a genuine dispute of fact fizzle for the same reason – namely, the failure to offer any evidence that Diedrick was aware at the time he arrested Nunez of the evidence that might have cast doubt on Perez's identifications. Nunez has submitted an audio tape recording of police dispatchers and other officers on duty on the evening of May 27, 2011, which makes clear that the police received reports of two suspects with long hair, which are inconsistent with Perez's identification of the short-haired Nunez. (Doc. No. 70-4.) Furthermore,

---

[2] Curiously, even though Nunez also insists that this call was made by Perez, the Court has listened to the audio provided by Nunez in his opposition declaration, and at no point does the 911 caller ever identify himself by name (*see* Doc. No. 70-4), and there are no other depositions, affidavits, or other documents in the record that would provide any basis to infer that Perez – as opposed to the numerous other eyewitnesses to the shootings – was, in fact, the caller. Significantly, eyewitness Hector Lopez Vega attested to the fact that "[a] bunch of people called the police" following the shooting. (Doc. No. 64-3 at 7.)

7

as Nunez notes, correctly, other witnesses – namely, Vega, Jonathan Baez, Carlos Almonte, and the five-year old girl – informed certain NYPD officers that both suspects had long hair. (Doc. Nos. 70-5, 70-6, 70-7.) In addition, contrary to Perez's account that there were two shooters, ballistics reports drafted by certain NYPD officers indicate that only a single gun was fired, which suggests that there may have been only one shooter. (Doc. Nos. 70-11 at 3, 70-12.)

But Plaintiff has failed to submit any evidence that Diedrick learned of these police reports prior to arresting Nunez. None of the officers on the tape recording of the dispatcher calls provided by Plaintiff identifies himself as Diedrick, and Diedrick's name does not appear anywhere on the internal NYPD memoranda memorializing the interviews with Vega, Lopez, Baez, and the five-year-old girl or the report describing the ballistics evidence. In addition, Plaintiff has failed to submit any deposition testimony from Diedrick, or any other police officers for that matter, showing that Diedrick was made aware of these reports. Accordingly, this evidence also fails to create a genuine dispute of fact concerning whether Diedrick had probable cause to arrest Nunez.

Nunez also insists that Diedrick should have been skeptical of Perez's testimony because Perez had been unduly influenced by a non-witness named "Gringo." Specifically, Nunez avers that: (1) Perez identified Nunez as the shooter only after a "friend" known as "Gringo" had downloaded Nunez's and Ferreira's photos from Facebook and informed Perez that he, Gringo, "had heard on the 'Grand Concourse' that Nunez and Ferreira were responsible for the shooting," and that such testimony (2) "contradicted the description" that both shooters had long hair, which had been provided by the 911 caller. (Opp'n 9.) But although Perez informed Acosta on June 1,

8

2011 and June 2, 2011 about his conversations with Gringo (Doc. Nos. 70-14, 70-15), there is no evidence that Diedrick was aware of these conversations.[3]

Throughout his opposition brief, Nunez appears to assume – without so arguing – that the facts learned by other police officers, such as Acosta and the 911 dispatchers, should be imputed to Diedrick for the purposes of considering whether Diedrick had probable cause to arrest Nunez. The Supreme Court has indeed concluded that "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983). But as the Second Circuit has clarified, this "collective knowledge doctrine" exists in order to "*assist* officers in establishing probable cause – not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge." *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003). In other words, this "doctrine *cannot* be used to impute to an officer 'facts known to some [other] members of the police force which exonerate an arrestee.'" *Id.* (quoting *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986)). Accordingly, under the law of this Circuit, the knowledge that other police officers had of facts that would have cast doubt upon Perez's identifications is not imputed to Diedrick. *See Morgan v. Cty. of Nassau*, No. 13-cv-6524 (JMA) (GRB), 2017 WL 664027, at *10 n.12 (E.D.N.Y. Feb. 17, 2017) ("[T]he Second Circuit has rejected the notion that exculpatory information known to one police officer can be imputed to other officers."); *O'Brien v. City of Yonkers*, No. 07-cv-3974 (LMS), 2008 WL 9355521, at *8 (S.D.N.Y. Dec. 9, 2008), *report and recommendation adopted*, No. 07-cv-3974 (KMK), 2013 WL 1234966 (S.D.N.Y. Mar. 22, 2013) ("Although conflicting accounts of the

---

[3] While Nunez also insists that Diedrick should not have trusted Perez's identifications because Diedrick "knew or should have known that Perez was a well known gang member" and knew or should have known of Perez's criminal record, Nunez has failed to point to any evidence to support either proposition. In any event, the law is also well settled that "knowledge of a victim witness's criminal . . . history, alone, is not enough to destroy probable cause." *Escalera v. Lunn*, 361 F.3d 737, 746 (2d Cir. 2004).

9

robbery and the suspect are memorialized in several police memoranda, there is no evidence in the record that suggests that these inconsistencies were presented to [the defendant police officers] . . . at the time they arrested [p]laintiff . . . .").

In sum, Nunez has failed to point to any evidence that Diedrick knew any of the facts that might have cast doubt on Perez's identifications of Nunez. Accordingly, the Court concludes, as a matter of law, that Diedrick had probable cause to arrest Nunez and grants Diedrick's motion for summary judgment on Nunez's false arrest claim.

## 2. Qualified Immunity

But even if probable cause could not be established as a matter of law, the Court would still grant summary judgment to Diedrick based on the doctrine of qualified immunity. Qualified immunity shields a government officer from liability under Section 1983 "if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)). "Because qualified immunity is an affirmative defense, [the] defendants bear the burden of showing that there was arguable probable cause." *Gaston v. City of New York*, 851 F. Supp. 2d 780, 795 (S.D.N.Y. 2012) (citing *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)).

"In the context of a false arrest claim, qualified immunity protects an officer if he had 'arguable probable cause' to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (citation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "In this respect, the qualified immunity test is more favorable to the officers than the one for probable cause." *Ackerson*, 702 F.3d at 21. Indeed, "qualified immunity

'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Costello v. Milano*, 20 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, [courts] look to the information possessed by the officer at the time of the arrest," without reference to "the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). Summary judgment on qualified immunity grounds is warranted where the "defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Husain v. Springer*, 494 F.3d 108, 131 (2d Cir. 2007) (quoting *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).

In light of the fact that Perez, an eyewitness to the shootings, unequivocally identified Nunez in both the June 8, 2010 photo array and the June 10, 2010 lineup, the Court concludes that a reasonable police officer in the same circumstances as Diedrick could reasonably have believed that probable cause existed to arrest Nunez. Accordingly, the Court concludes that even if there were a genuine dispute of material fact on the issue of probable cause – which there is not – Diedrick would still be entitled to summary judgment on Nunez's false arrest claim on qualified immunity grounds.

### B. Malicious Prosecution

For Plaintiff to prevail on his Section 1983 malicious prosecution claim, he "must establish the elements of malicious prosecution under state law, and then show that his Fourth Amendment rights were violated after legal proceedings were initiated." *Little v. City of New York*, 487 F. Supp. 2d 426, 440 (S.D.N.Y. 2007) (citing *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation and internal quotation marks omitted).

With respect to the third element, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Id*. at 161–62. "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Gaston*, 851 F. Supp. 2d at 793 (quoting *Danielak v. City of New York*, No. 02-cv-2349 (KAM), 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005)). A grand jury indictment "creates a presumption of probable cause," which "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 162 (citation omitted). As the Second Circuit has underscored, "it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 73. "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (citation omitted); *see also Frederick v. City of New York*, No. 11-cv-469 (JPO), 2012 WL 4947806, at *8 (S.D.N.Y. Oct. 11, 2012) (observing that "[t]he Second Circuit has interpreted this requirement strictly").

Here, Nunez acknowledges this presumption, but he argues, conclusorily, that "the presumption of probable cause created by the indictment is rebutted by the evidence of bad faith on the part of Det. Diedrick." (Opp'n 22.) According to Nunez, Diedrick "misrepresented to

prosecutors the true circumstances leading to the arrest" and gave "testimony before the grand jury that contained material omissions." (Opp'n 20.)

But for the reasons set forth earlier, Nunez has not pointed to any evidence showing that Diedrick had reason to doubt Perez's two identifications, nor has he presented any evidence of Diedrick learning more between the arrest and indictment. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). Even more critically, he has failed to point to *any* evidence regarding the content of the grand jury proceedings. As the Second Circuit concluded in *Rothstein*, summary judgment on a malicious prosecution claim is appropriate where, as here, the plaintiff offers no evidence concerning "the content of [the malicious prosecution defendant's] grand jury testimony" and relies on "rank speculation" regarding the defendant's involvement in grand jury proceedings. 373 F.3d at 284 (granting summary judgment based on similarly foundationless allegations of impropriety in grand jury proceedings).[4]

Because Nunez has clearly failed to rebut the presumption of probable cause resulting from the grand jury's indictment, summary judgment in Diedrick's favor on the malicious prosecution claim must be granted. In any event, even if there were a genuine dispute as to probable cause – which there is not – it is clear that Diedrick had "arguable probable cause" and therefore is entitled to qualified immunity with respect to Nunez's malicious prosecution claim. *See Keith v. City of*

---

[4] Nunez faults Diedrick for not producing minutes from the grand jury proceeding. (Opp'n 19.) However, Nunez has failed to show that Diedrick possesses the grand jury minutes, which are sealed under New York law. *Baynes v. Ruderfer*, No. 15-cv-2898 (AT) (GWG), 2017 WL 587395, at *2 (S.D.N.Y. Feb. 14, 2017) (explaining that "[u]nder New York Criminal Procedure Law § 190.25(4), grand jury testimony is secret and may not be disclosed except by court order"). Furthermore, it appears as though Nunez never even applied to have the grand jury minutes unsealed. *See Cabeza v. Thompson*, No. 16-cv-1079 (NGG) (LB), 2016 WL 1222256, at *3 (E.D.N.Y. Mar. 23, 2016) (noting that a party moving to unseal grand jury minutes has the burden of "proffer[ing] facts 'giving rise to a strong inference of misconduct'" (quoting *In Matter of Grand Jury Minutes in U.S. v. Tam*, No. 96-cv-2810 (ILG), 1997 WL 21369, at *4 (E.D.N.Y. Jan. 9, 1997)).

*New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (affirming dismissal of malicious prosecution claim where, as here, officers had at least "arguable probable cause to arrest" and plaintiff failed to "identify some fact that came to the attention of [defendants] before the commencement of [plaintiff's] prosecution that was sufficient to 'dissipate' the probable cause that existed at the time of [plaintiff's] putative arrest" (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996))).

IV. CONCLUSION

For the reasons set forth above, Diedrick's motion for partial summary judgment is GRANTED. Accordingly, Nunez's claims for false arrest and malicious prosecution are dismissed. The Clerk is respectfully directed to terminate the motion pending at docket number 61. As set forth in the Court's Order dated April 1, 2017, trial on Nunez's claim for excessive force against Diedrick shall begin on Monday, June 26, 2017 at 9:30 a.m. (Doc. No. 72.) The parties are reminded that the proposed pretrial order and accompanying submissions are due by May 25, 2017. (Doc. No. 78.)

SO ORDERED.

Dated: May 18, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/17

14